## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

SHANNON FERENCZ,        )
Administratrix of the ESTATE OF   )     Civil Action No. 11 - 1130
CADE STEVENS, and SHANNON   )
FERENCZ, individually,        )
                          )     Chief Magistrate Judge Lisa Pupo Lenihan
            Plaintiff,   )
                          )
            v.           )     ECF Nos. 39, 44
                          )
LARRY MEDLOCK, *et al.*,

           Defendants.

## MEMORANDUM OPINION AND ORDER

This case is before the Court on the Motion to Dismiss Plaintiff's Second Amended Complaint, or alternatively, Motion for Summary Judgment filed by Defendants Fayette County and Louis Krukowski[1] (ECF No. 39); the Motion for Judgment on the Pleadings filed by Defendants Timmee Burnsworth, Carol Younkin, and PrimeCare Medical, Inc. (ECF No. 44); and Plaintiff's Briefs in Opposition to both pending Motions (ECF Nos. 47, 50). After careful consideration of the submissions of the parties, the Motion filed by Fayette County and Krukowski will be denied and the Motion filed by Burnsworth, Younkin, and PrimeCare Medical will be granted in part and denied in part.

### I.       Procedural Background

As Administratrix of the Estate of Cade Stevens, Plaintiff, through counsel, initiated this action on September 7, 2011, by filing a Complaint pursuant to the Civil Rights Act of 1871, as

---

[1]     Plaintiff incorrectly identifies this Defendant as Louis Krakowski.

amended, 42 U.S.C. § 1983.  (ECF No. 1.)  The Complaint identified the following Defendants: Larry Medlock ("Medlock"), Warden of the Fayette County Prison; Brian Miller ("Miller"), Deputy Warden of the Fayette County Prison; Geary O'Neil ("O'Neil"), Barry Simon ("Simon"), and John Does #1-#4, Correctional Officers at the Fayette County Prison; John Doe #5, Counselor at the Fayette County Prison; and PrimeCare Medical, Inc. ("PrimeCare Medical"), the medical provider at the Fayette County Prison.  (ECF No. 1.)  All individuals were named as Defendants in both their official and individual capacities.  (ECF No. 1.)

In response to a Motion to Dismiss filed by Defendant Medlock, (ECF No. 10), Plaintiff filed an Amended Complaint on November 24, 2011 (ECF No. 13).  The Amended Complaint added Defendant Louis Krukowski ("Krukowski"), who was substituted for John Doe #5; Defendant Fayette County; and Defendants Carol Younkin ("Younkin") and Timmee Burnsworth ("Burnsworth"), employees of PrimeCare Medical.  (ECF No. 13.)  Again, all individuals were named as Defendants in both their official and individual capacities.  (ECF No. 13.)  Also in the Amended Complaint, Plaintiff added herself as a Plaintiff in her individual capacity as the mother of the decedent Cade Stevens.  (ECF No. 13.)

Without leave of Court and beyond the time permitted by Federal Rule of Civil Procedure 15, a Second Amended Complaint was filed on February 29, 2012.  (ECF No. 38.)  The Second Amended Complaint avers three Counts: Count I is for multiple civil rights violations under 42 U.S.C. § 1983; Count II is a survival action under Pennsylvania state law; and Count III is a wrongful death action under Pennsylvania state law.  In response to the Second Amended Complaint, Defendants Fayette County and Krukowski filed a Motion to Dismiss, or in the alternative, a Motion for Summary Judgment (ECF No. 39).  Similarly, Defendants Burnsworth, Younkin, and PrimeCare Medical filed an Answer (ECF No. 42) along with a Motion for

Judgment on the Pleadings (ECF No. 44).  Answers were also filed by Defendants Medlock and

Miller (ECF No. 41) and Defendants O'Neil and Simon (ECF No. 43).

## II.    Plaintiff's Allegations

According to Plaintiff's Second Amended Complaint, Cade Stevens ("Stevens") was

lodged in the Fayette County Prison ("jail") as a pre-trial detainee on September 10, 2009.  (ECF

No. 38 at ¶¶ 33, 35.)  Upon admittance into the jail, PrimeCare Medical employee Defendant

Younkin conducted a medical evaluation of Stevens, and Stevens was diagnosed as going

through drug withdrawal.  Id. at ¶ 38.  The medical evaluation also included a mental health

assessment, which involved a point system.  Id. at ¶¶ 39-40.  If a pre-trial detainee scored an

eight (8) or higher on the scale, he or she was required to be classified as suicidal pursuant to the

jail's inmate classification policy.  Id. at ¶ 40.  Suicidal pre-trial detainees are immediately

placed on a documented suicide watch, wherein they are checked every 15 minutes by

Corrections Officers.  Id. at ¶ 42.  Stevens scored a twelve (12) on his mental health assessment,

and was thus required to be classified as suicidal pursuant to the jail's inmate classification

policy.  Id. at ¶ 41, 45.

Following his medical evaluation, the Prison Inmate Classification Committee, consisting

of Defendants Younkin, Miller, and Krukowski, met to discuss Stevens and appropriately

classify him based on the information obtained during his medical evaluation.  Id. at ¶¶ 43-45.

The Committee did not classify Stevens as suicidal, as they were required to do under jail

classification policy, and no member of the Committee communicated to PrimeCare Medical

staff or the Correctional Officers in B Range responsible for monitoring Stevens, that he was

suicidal and going through drug withdrawal.  Id. at ¶ 46.  Nevertheless, despite learning that

Stevens was suicidal and going through drug withdrawal, PrimeCare Medical employee

Defendant Burnsworth failed and/or delayed in assessing Stevens and in giving Stevens medication for the drug withdrawal he was experiencing.  Id. at ¶ 48.  Defendant Burnsworth also failed to communicate to Corrections Officers in B Range that Stevens was both suicidal and going through drug withdrawal.  Id.

Stevens was lodged on B Range without a cell mate.  Id. at ¶ 47.  At the time, the jail was equipped with an operational and working video surveillance system and there was a video camera in Stevens' cell.  Id. at ¶¶ 49, 51.  The video surveillance of Stevens' cell was broadcast on four different television monitors throughout the jail, all of which were working and manned by Correctional Officers.  Id. at ¶ 51.  Additionally, the B Range work station was located around the corner from Stevens' cell, approximately 20 feet away.  Id. at ¶ 52.  This station was equipped with one of the four television monitors, which broadcast the video surveillance of Stevens' cell.  Id. at ¶ 53.  The monitor was situated on the wall above the desk at the work station, such that it would be directly in front of the Correctional Officer manning the B Range station if he was sitting facing his desk.  Id. at ¶ 54.

On the morning of September 12, 2009, Defendant Simon was stationed at the B Range work station.  Id. at ¶ 55.  His shift that day was from 7:30 a.m. to 3:30 p.m.  Id.  At approximately 9:32 a.m., Stevens attempted suicide by trying to hang himself with his bed sheet from the top of the cell bars.  Id. at ¶ 56.  The suicide attempt took several minutes and was unsuccessful.  Id. at ¶¶ 57-58.  After the attempt, however, Stevens left the bed sheet hanging from the top of his cell bars and started to pace in his cell in visible mental distress.  Id. at ¶ 58.  This suicide attempt was viewable from the B Range work station video surveillance monitor as well as the other three monitors throughout the jail.  Id. at ¶ 59.  Also viewable on the monitors was the hanging bed sheet from the top of Stevens' cell bars.  Id. at ¶ 60.

A few minutes later, at approximately 9:37 a.m., Stevens attempted to commit suicide a second time by hanging himself with his bed sheet from the top of his cell bars.  <u>Id</u>. at ¶ 61. Again, this suicide attempt took several minutes, was unsuccessful, and was viewable from the B Range work station video surveillance monitor as well as the other three monitors throughout the jail.  <u>Id</u>. at ¶¶ 62-64.  Stevens, however, once again left the bed sheet hanging from the top of his cell bars after the attempt and began to pace in his cell in visible mental distress.  <u>Id</u>. at ¶ 64. This too was visible on the video surveillance monitors.  <u>Id</u>. at ¶ 65.

A few minutes later, at approximately 9:40 a.m., Stevens attempted to commit suicide a third time by hanging himself with his bed sheet.  <u>Id</u>. at ¶ 66.  This time, Stevens hung himself from his bed sheet for over twenty minutes, without being noticed by any of the four Correctional Officers who were manning the four video surveillance monitors.  <u>Id</u>. at ¶ 67.  In fact, Defendant O'Neil, who had temporarily replaced Defendant Simon at the B Range work station, was asleep at his work station.  <u>Id</u>. at ¶¶ 68-69.  Defendant O'Neil in no way tried to conceal that he was sleeping on the job because he knew that he too was viewable by the jail's video surveillance system.  <u>Id</u>. at ¶ 69.  At approximately 10:07 a.m., an unknown Correctional Officer who was walking by the B Range work station viewed the monitor and saw Stevens hanging.  <u>Id</u>. at ¶ 70.  At that point, Stevens had been hanging for almost half an hour.  <u>Id</u>. at ¶ 71.  Stevens was cut down and transported to local Uniontown Hospital where he was subsequently pronounced dead due to asphyxiation by hanging.  <u>Id</u>. at ¶ 74.

### III.    Standards of Review

Defendants Krukowski and Fayette County have filed a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), or alternatively, a Motion for Summary Judgment

pursuant to Federal Rule of Civil Procedure 56(a).[2]   Defendants Younkin, Burnsworth, and PrimeCare Medical have filed a Motion for Judgment on the Pleadings pursuant to Federal Rule of Civil Procedure 12(c).

### A.  Motion for Judgment on the Pleadings

Under Federal Rule of Civil Procedure 12(c), a party may move for judgment on the pleadings after the pleadings are closed but within such time as to not delay the trial.  Fed. R. Civ. P. 12(c).  Because Defendants Younkin, Burnsworth, and PrimeCare Medical had already filed an answer to Plaintiff's Second Amended Complaint, their Motion was appropriately filed pursuant to Rule 12(c) for judgment on the pleadings.  Judgment on the pleadings under Rule 12(c) may be granted "only if, viewing all the facts in the light most favorable to the nonmoving party, no material issue of fact remains and the moving party is entitled to judgment as a matter of law."  Knepper v. Rite Aid Corp., 675 F.3d 249, 257 (3d Cir. 2012) (citing Rosenau v. Unifund Corp., 539 F.3d 218, 221 (3d Cir. 2008)).  "A motion for judgment on the pleadings based on the defense that the plaintiff has failed to state a claim is analyzed under the same standards that apply to a Rule 12(b)(6) motion."  Revell v. Port Auth. of N.Y. & N.J., 598 F.3d 128, 134 (3d Cir. 2010) (citing Turbe v. Gov't of the Virgin Islands, 938 F.2d 427, 428 (3d Cir. 1991)).  Thus, in this regard the standard of review is identical to that of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).  Turbe, 938 F.2d at 428 (citations omitted).  The only notable difference is that a court, for a motion on the pleadings, may review not only the complaint but also the answer and written instruments attached to the pleadings.  Brautigam v. Fraley, 684 F. Supp. 2d 589, 591-92 (M.D. Pa. 201).  Despite this difference, courts in this

---

[2]        The Court notes that two exhibits have been attached to Defendants' Motion.  However, the use of these exhibits by this Court does not convert Defendants' Motion to Dismiss into a Motion for Summary Judgment because they are matters of public record of which the Court can take judicial notice.  *See* Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993).

circuit have consistently stated that the distinction between the two standards is "merely semantic." Christy v. We The People Forms & Serv. Ctrs., 213 F.R.D. 235, 238 (D. N.J. 2003); *see* Smith v. City of Phila., 345 F. Supp. 2d 482, 485 (E.D. Pa. 2004).

**B. Motion to Dismiss**

When deciding whether the grant or deny a 12(b)(6) motion the Supreme Court has held:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief **requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.** Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

Bell Atlantic Co. v. Twombly, 550 U.S. 544, 555 (2007) (cites and footnote omitted) (emphasis added); *see also*, Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (a plaintiff's factual allegations must be enough to raise a right to relief above the speculative level).

Most recently, in Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009), the Supreme Court held, ". . . a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949 (citations omitted).

In Iqbal, the Court specifically highlighted the two principles which formed the basis of the Twombly decision: First, for the purpose of a motion to dismiss, courts must accept as true all factual allegations set forth in the complaint, but courts are not bound to accept as true any legal conclusions couched as factual allegations. Id. at 1949-50. *See also*, Fowler v. UPMC Shadyside, 578 F.3d 203 (3d Cir. 2009). Second, a complaint will only survive a motion to dismiss if it states a plausible claim for relief, which requires a court to engage in a context-

specific task, drawing on the court's judicial experience and common sense.  Id. at 1950.  Where

well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct,

the complaint has alleged – but has not shown – the complainant is entitled to relief.  Id., *citing*

Fed.R.Civ.P. 8(a)(2).

## IV.    Discussion

### A.  Amendment of Pleadings

Defendants Krukowski and Fayette County assert that Plaintiff's Second Amended

Complaint should be dismissed in its entirety as to them and also insofar as it asserts claims on

behalf of Plaintiff, individually, as the mother of Cade Stevens.  Specifically, they maintain that

Plaintiff's Second Amended Complaint is untimely and that it should not relate back to the filing

date of the original Complaint.  Similarly, Defendants Younkin and Burnsworth move for

judgment on the pleadings on the ground that they too were included as Defendants after

expiration of the applicable statute of limitations.

#### 1.  Statute of Limitations

Section 1983 provides that "[e]very person who, under color of any statute, ordinance,

regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of

the United States . . . the deprivation of any rights, privileges, or immunities secured by the

Constitution and laws, shall be liable to the party injured in an action at law . . ." but it does not

provide for any applicable statute of limitations.  42 U.S.C. § 1983.  Title 28 U.S.C. § 1652

provides that "[t]he laws of the several states, except where the Constitution or treaties of the

United States or Acts of Congress otherwise require or provide, shall be regarded as the rules of

decision in civil actions in the courts of the United States, in cases where they apply," and 42

U.S.C. § 1988 further provides that

the protection of all persons in the United States in their civil rights…shall be exercised and enforced in conformity with the laws of the United States…but in all cases where they are not adapted to the object, or are deficient in the provisions necessary to furnish suitable remedies and punish offenses against law, the common law, as modified and changed by the constitution and statutes of the State wherein the court having jurisdiction of such civil…cause is held…shall be extended to govern the said courts in the trial and disposition of the cause….

42 U.S.C. § 1988(a).

In fact, the Supreme Court stated that, "in 42 U.S.C. § 1988 Congress had plainly instructed the federal courts to refer to state law when federal law provides no rule of decision for actions brought under § 1983 . . . ." Chardon v. Soto, 462 U.S. 650, 657 (1983) (citing Bd. of Regents of the Univ. of the State of N.Y. v. Tomanio, 446 U.S. 478, 484 (1980)).  Thus, in "civil rights actions under 42 U.S.C. §§ 1983, 1985, federal courts must ascertain the underlying cause of action under state law and apply the limitation period which the state would apply if the action had been brought in state court" and the "controlling statute of limitations in an action pursuant to 42 U.S.C. § 1983 is the most analogous one provided by state law." Jennings v. Shuman, 567 F.2d 1213, 1216 (3d Cir. 1977) (citing Polite v. Diehl, 507 F.2d 119, 122 (3d Cir. 1974)); Eubanks v. Clarke, 434 F. Supp. 1022, 1030 (E.D. Pa. 1977).

In this case, the applicable statute of limitations is two years. See 42 Pa. C.S. § 5524(2); Sameric Corp. of Del., Inc. v. City of Phila., 142 F.3d 582, 599 (3d Cir. 1998).  In addition, a § 1983 cause of action "accrues when the plaintiff knew or should have known of the injury upon which its action is based." Sameric, 142 F.3d at 599.  Here, the statute of limitations started running on September 12, 2009, and expired two years later, on September 12, 2011.  Plaintiff filed her original Complaint on September 7, 2011, just days prior to the expiration of the statute of limitations; however, Defendants Krukowski, Fayette County, Younkin, and Burnsworth were not added as Defendants until Plaintiff filed her Amended Complaint on November 24, 2011,

9

approximately two-and-a-half months after the statute of limitations expired.  Thus, the dispute herein lies in whether amendment of Plaintiff's Complaint related back to September 7, 2011, the date the original Complaint was filed.

### 2.  The Relation-Back Doctrine

Where the statute of limitations has expired, a plaintiff may only add a new claim or name a new party if the plaintiff demonstrates that the new claim or party relates back to the filing date of the original complaint.  Estate of Grier v. Univ. of Pa. Health Syst., No. 07-4224, 2009 U.S. Dist. LEXIS 48905, at *5-6 (E.D. Pa. June 11, 2009).  "If the amendment relates back to the date of the filing of the original complaint, the amended complaint is treated, for statute of limitations purposes, as if it had been filed at that time."  Garvin v. City of Phila., 354 F.3d 215, 220 (3d Cir. 2003) (citing Singletary v. Pa. Dep't of Corr., 266 F.3d 186, 189 (3d Cir. 2001)). Under Federal Rule of Civil Procedure 15(c)(1), an amendment to a pleading relates back to the date of the original pleading when:

(A)  the law that provides the applicable statute of limitations allows relation back;

(B)  the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading; or

(C)  the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment

(i)  received such notice of the action that it will not be prejudiced in defending on the merits; and

(ii)  knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Fed. R. Civ. P. 15(c).  In other words, to add or substitute a new party, including replacing a

"John Doe" defendant with a named defendant, a plaintiff must:

> establish that the amended pleading relates to the same conduct or transaction or occurrence set forth in the original complaint; that within the 120-day time period prescribed by Rule 4(m), the proposed new defendant had notice of the action; and that the proposed new defendant knew or should have known that but for a mistake of identity, he or she would have been named in the initial complaint.

Estate of Grier, No. 07-4224, 2009 U.S. Dist. LEXIS 48905, at *7-8.  The plaintiff seeking leave

to amend a pleading has the burden of demonstrating that each element has been satisfied.

Muhammed v. Pawlowski, No. 11-5004, 2012 U.S. Dist. LEXIS 30698, at n.3 (E.D. Pa. Mar. 7,

2012).  Defendants Krukowski and Fayette County dispute whether Plaintiff has met her burden

with respect to the third element.

    With regard to the third element, the Supreme Court has recently held that the starting

inquiry focuses on whether the newly-added party knew or should have known that, absent some

mistake, the lawsuit would have been brought against him or her.  Krupski v. Costa Crociere

S.p.A., 130 S. Ct. 2485, 2490 (2010) ("We hold that relation back under Rule 15(c)(1)(C)

depends on what the party to be added knew or should have known, not on the amending party's

knowledge or its timeliness in seeking to amend the pleading."); *see also* Siciliano v. City of

Phila., No. 09-5270, 2010 U.S. Dist. LEXIS 78658, at *6 (E.D. Pa. Aug. 2, 2010) (internal

citation omitted) ("In evaluating the notice requirements, the focus is on what the defendant to be

added knew or should have known, not what the plaintiffs knew or when they took action to

move to amend.  The knowledge of the amending party is not a factor in a Rule15(c)(1)(C)

analysis.").  Specifically, the Supreme Court stated that under Rule 15(c)(1)(C)(ii), it is not

whether the plaintiff knew or should have known the identity of the newly-added party as the

proper defendant, but whether the proper defendant knew or should have known that it would have been named as a defendant but for an error in identity. <u>Krupski</u>, 130 S. Ct. at 2493.

However, "[i]nformation in the plaintiff's possession is relevant . . . if it bears on the defendant's understanding of whether the plaintiff made a mistake regarding the proper party's identity" as opposed to a fully informed decision to sue one party instead of another "while fully understanding the factual and legal differences between the two parties." <u>Id</u>. at 2493-94.  The latter would be "the antithesis of making a mistake concerning the proper party's identity." <u>Id</u>. at 1294.  Moreover, a plaintiff's knowledge of a party's existence does not necessarily "preclude her from making a mistake with respect to that party's identity." <u>Id</u>.

> A plaintiff might know that the prospective defendant exists but nonetheless harbor a misunderstanding about his status or role in the events giving rise to the claim at issue, and she may mistakenly choose to sue a different defendant based on that misimpression.  That kind of deliberate but mistaken choice does not foreclose a finding that Rule 15(c)(1)(C)(ii) has been satisfied.

<u>Id</u>.  However, "[w]hen the original complaint and the plaintiff's conduct compel the conclusion that the failure to name the prospective defendant in the original complaint was the result of a fully informed decision as opposed to a mistake concerning the proper defendant's identity, the requirements of Rule 15(c)(1)(C)(ii) are not met." <u>Id</u>. at 2496.

### a. Defendants Fayette County and Krukowski

As noted *supra*, the third element of Rule 15(c)(1) requires a plaintiff to show that, within 120 days of filing the original complaint, the newly-added defendant knew or should have known that the present action would have been brought against it but for a mistake regarding its identity.  Defendant Fayette County argues that the Amended Complaint (and also Second Amended Complaint) should not relate back because Plaintiff was aware of its existence and its role in this matter prior to filing her original Complaint and she made an affirmative decision not

to name it or any other municipal entity as a defendant.  Similarly, Defendant Krukowski argues

that, although he was identified in Plaintiff's original Complaint as John Doe #5, Plaintiff had

specific knowledge of his identity, his name, and his role in this matter prior to filing her original

Complaint.[3]   Specifically, Defendant Krukowski argues that his identity was revealed to

Plaintiff's attorney at a Coroner's inquest conducted on April 29, 2010, more than sixteen (16)

months prior to the filing of the original Complaint.  Furthermore, on the same day Plaintiff filed

her original Complaint, Cade Stevens' father, William Stevens, filed a complaint involving the

same incident which identified both Fayette County and Krukowski as defendants.  *See* Case No.

2:11-cv-1131.[4]   Despite this information, Plaintiff did not amend her Complaint to add Fayette

County or substitute Krukowski for John Doe #5 until after the statute of limitations expired.

Defendants rely on language in Garvin in which the Third Circuit stated, "Of course, an

amended complaint will not relate back if the plaintiff had been aware of the identity of the

newly named parties when she filed her original complaint and simply chose not to sue them at

that time."  Garvin, 354 F.3d at 221-22.  Plaintiff, on the other hand, argues that Garvin was

impliedly overruled by Krupski and that the focus is *entirely* and *solely* on what Defendants

knew or should have known; what she knew, should have known, or could have discovered is of

no consideration whatsoever.  Plaintiff's position, however, would compel this Court to ignore

the "mistake" provision in Rule 15(c)(1)(C)(ii), and contrary to her argument, courts in this

Circuit continue to cite the aforementioned language in Garvin with authority since the Supreme

Court's ruling in Krupski because it is not contrary to the Supreme Court's holding.  *See* Cotton

---

[3]      By way of review, Defendant Krukowski was the jail's counselor who was a member of the Inmate
Classification Committee with respect to Cade Stevens and he was identified as John Doe #5 in Plaintiff's original
Complaint.  He replaced John Doe #5 when Plaintiff filed her Amended Complaint on November 24, 2011.

[4]      This case was voluntarily dismissed by the plaintiff on December 12, 2011.

v. Allegheny County, No. 11-969, 2012 U.S. Dist. LEXIS 144058, at \*20 (W.D. Pa. Oct. 4, 2012); Spiess v. Pocono Mt. Reg'l Police Dep't, No. 3:10cv287, 2012 U.S. Dist. LEXIS 75345, at \*13 (M.D. Pa. May 31, 2012); Jamison v. City of York, No. 1:09-cv-1289, 2010 U.S. Dist. LEXIS 104871, at \*12 (M.D. Pa. Sept. 30, 2010).  Indeed, the Supreme Court specifically stated in Krupski that if "[the moving party makes] a deliberate choice to sue one party instead of another while fully understanding the factual and legal differences between the two parties [that] is the antithesis of making a mistake concerning the proper party's identity."  Krupski, 130 S. Ct. at 2494.

  With respect to Defendant Fayette County, the Court finds that whether it knew or should have known that it would have been named as a defendant in this action is essentially irrelevant because Plaintiff did, in fact, name Fayette County as a Defendant in her original Complaint when she sued Defendants Medlock, Miller, O'Neil, and Simon in their official capacities.[5] Consequently, Defendants' Motion will be denied to the extent Fayette County seeks dismissal from this action on the basis that Plaintiff's Amended Complaint (and Second Amended Complaint) do not relate back to the filing of her original Complaint.

  Although it presents a somewhat more complicated issue, the Court is compelled to find that Plaintiff's Amended Complaint (and Second Amended Complaint) should relate back to the date she filed her original Complaint with respect to Defendant Kruwkowski.  In contrast to most other Courts of Appeal,[6] the Third Circuit considers a plaintiff's lack of knowledge regarding a

---

[5]  A § 1983 action brought against a person in his or her official capacity "generally represent[s] only another way of pleading an action against an entity of which an officer is an agent."  Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 n.55 (1978).

[6]  See Wilson v. United States, 23 F.3d 559, 563 (1st Cir. 1994); Barrow v. Wethersfield Police Dep't., 66 F.3d 466, 469 (2d Cir. 1995), amended by 74 F.3d 1366 (2d Cir. 1996); W. Contracting Corp. v. Bechtel Corp., 885 F.2d 1196, 1201 (4th Cir. 1989); Jacobsen v. Osborne, 133 F.3d 315, 320 (5th Cir. 1998); Cox v. Treadway, 75 F.3d

14

defendant's identity to constitute a "mistake" within the meaning of Rule 15(c)(1)(C)(ii), and thus permits relation-back amendments of complaints to substitute a real name for a John Doe. *See* Singletary v. Pa. Dep't. of Corr., 266 F.3d 186, 201 (3d Cir. 2001) (noting Rule 15(c)(1)(C)(ii) may be satisfied when a plaintiff lacked knowledge of the identity of a John Doe defendant when the original complaint was filed).  However, Defendant Krukowski argues that Plaintiff did not lack knowledge as to his identity and therefore did not make a "mistake" as contemplated by Rule 15(c)(1)(C)(ii).  Specifically, he asserts that Plaintiff knew of his identity as evidenced by information provided to Plaintiff's attorney at the Coroner's inquest on April 29, 2010.  While this information certainly can cut both ways as to the third requirement for relation back to occur, the Court finds that Defendant Krukowski had actual and/or imputed notice that he would likely be added as a Defendant in this suit.

The Third Circuit has recognized two methods of imputing notice to an individual defendant.  First, notice may be imputed by the "shared attorney" method – whereby the individual, previously unnamed defendant received timely notice because of sharing an attorney with an originally named defendant.  For this to be valid, there must be representation by the shared counsel within the 120-day period.  Garvin, 354 F.3d at 223.  In other words, the test "is not whether [the] new defendant[] *will* be represented by the same attorney, but rather whether the new defendant[] [*is*] being represented by the same attorney."  Id. (citation omitted) (emphasis in original).  Second, notice may be imputed by the "identity of interest" method – whereby the individual defendant received timely notice because he had an identity of interest

---

230, 240 (6th Cir. 1996); Worthington v. Wilson, 8 F.3d 1253, 1256 (7th Cir. 1993); Garrett v. Fleming, 362 F.3d 692, 696-97 (10th Cir. 2004); Powers v. Graff, 148 F.3d 1223, 1226-27 (11th Cir. 1998).

with an originally named defendant.  Brown v. City of Phila., No. 09-5157, 2010 U.S. Dist. LEXIS 44780, at *11-12 (E.D. Pa. May 7, 2010) (citing Singletary, 266 F.3d at 196).

On the same day and immediately after Plaintiff filed her original Complaint in this case, William Stevens, the decedent's father, filed a complaint involving the same incident and naming, among others, Defendant Krukowski as a defendant.  *See* Case No. 2:11-cv-1131.  The case was assigned to the undersigned and Attorney Jones entered her appearance on behalf of Defendants Krukowski, Miller, and Fayette County.  On the same day, Attorney Jones entered her appearance on behalf of Defendant Miller in this case, and later accepted representation on behalf of Defendants Fayette County and Krukowski once he was substituted for Defendant John Doe #5.  This clearly satisfies the "shared attorney" method of imputed notice.  *See* Muhammed, No. 11-5004, 2012 U.S. Dist. LEXIS 30698, at *10-13 (finding relation back satisfied under the "shared attorney" method of imputed notice).

Although it is entirely unknown as to why Plaintiff's attorney initially named Defendant Krukowski as John Doe #5 when he was presumably aware of Krukowski's identity as early as April 29, 2010, it is evident that Defendant Krukowski knew or should have known that he was John Doe #5 and that but for the mistake in his identity Plaintiff would have named him as a defendant in this suit the day she filed her original Complaint.  Consequently, the Court finds that Plaintiff's Amended (and Second Amended) Complaint relates back as to Defendant Krukowski.

### b.  Defendants Younkin and Burnsworth

Defendants Younkin and Burnsworth argue that judgment should be entered in their favor or they should be dismissed from this action because they were added as parties after the expiration of the statute of limitations.  Unlike Defendants Kruwkowski and Fayette County,

Defendants Younkin and Burnsworth make no reference to Federal Rule of Civil Procedure 15(c)(1) and presumably did not anticipate, or chose to ignore, Plaintiff's argument that her Amended (and Second Amended) Complaint should relate back to the filing date of her original Complaint.  Instead, they assert that they are entitled to relief because Plaintiff was aware of their actions prior to the expiration of the statute of limitations and she "cannot assert a failure or inability to discover or other equitable principle which might toll the statute to allow these claims to proceed."  (ECF No. 45 at 6.)  In light of the fact that it is Plaintiff's burden to establish the three elements required for relation back to occur, the Court will ignore this oversight and conduct its own analysis under Rule 15(c)(1) to determine whether Plaintiff's claims against these Defendants relate back to her timely filed original Complaint.

Again, the disputed element at issue is whether these two Defendants knew or should have known that, but for some mistake regarding their identities, they would be named as parties to this suit.  While Plaintiff spends almost the entirety of her Brief arguing that her knowledge with respect to this analysis is irrelevant, she fails to make any argument whatsoever with respect to how these Defendants knew or why they should have known that they would be named as parties.

While the Court could conclude that based on the role of both parties in the Coroner's inquest on April 29, 2010, they should have known that but for a mistake in their identities they would be named as defendants in this suit, Plaintiff has simply not met her burden in proving this element particularly in light of the fact that there is nothing before the Court which could indicate that Plaintiff made a "mistake" regarding their identities as that term is contemplated under Rule 15(c)(1)(C)(ii).  *See* Fed. R. Civ. P. 15 (Advisory Committee Notes to the 1991 Amendment explain that the Rule was written to allow a plaintiff "to correct a formal defect such

as a misnomer or misidentification."); *see also* <u>Arthur v. Maersk, Inc.</u>, 434 F.3d 196, 208 (3d Cir.

2006) (finding that a "mistake" concerning the identity of the proper party under Rule 15(c) can

also flow from "lack of knowledge" as opposed to just an inaccurate description).  In fact, it is

clear that Plaintiff knew of the existence, identities, and roles of both parties prior to filing her

original Complaint because both individuals were identified by name in the body of Plaintiff's

original Complaint.   Despite this fact, Plaintiff failed to assert any claims against them.

Moreover, the substance of Plaintiff's allegations in regard to these two parties did not

substantially change between Complaints which implies that Plaintiff was *not* unaware of the

roles they played until after she filed her original Complaint.   As such, Plaintiff's conduct

suggests that her failure to name them as Defendants in her original Complaint was the result of

a "fully informed decision as opposed to a mistake" concerning their identities.  <u>Krupski</u>, 130 S.

Ct. at 2496; *see also* <u>Carroll v. ABM Janitorial Services-Mid Atl., Inc.</u>, 2012 U.S. Dist. LEXIS

125861 at *5 (D. Del. Sept. 5, 2012) (denying amendment of complaint with respect to the

addition of certain defendants whom plaintiff identified by name in the original complaint and its

exhibits but did not assert claims).   Furthermore, "mistake" for purposes of Rule 15(c)(1)(C)

"does not encompass an attorney's mistake in choosing whom to sue" if there was no mistake of

identity.  <u>Dorsey v. Wilkinson</u>, No. 1:05CV1760, 2006 U.S. Dist. LEXIS 36128, at *30 (N.D.

Ohio June 2, 2006) (citing <u>Louisiana-Pacific Corp. v. ASARCO, Inc.</u>, 5 F.3d 431, 434 (9th Cir.

1993)).   Consequently, the Court is compelled to find that, with respect to the addition of these

two Defendants, Plaintiff's Amended Complaint (and Second Amended Complaint) does not

relate back to the date she filed her original Complaint.   Therefore, the claims against these two

Defendants are time-barred and they will be dismissed from this action with prejudice.

### c.   Plaintiff's claims asserted on behalf of herself

For the same reasons cited above in reference to Federal Rule of Civil Procedure 15(c)(1), Defendants Fayette County and Krukowski move to dismiss Plaintiff's claims asserted individually, on behalf of herself, as the mother of Cade Stevens.  Specifically, Defendants assert that the same analysis under Rule 15(c)(1) applies where a new plaintiff is added to an amended filing.  As noted *supra*, Plaintiff did not amend her Complaint to bring this action on behalf of herself, individually, until after the statute of limitations period had expired; however, she argues that her amendment relates back to the date she filed her original Complaint because the Defendants knew or should have known that Plaintiff, as the mother of Cade Stevens, had a cause of action against them in her individual capacity.

As an initial matter, Defendants Fayette County and Krukowski are correct that the Third Circuit has applied the three-prong standard for relation back to an amended pleading that names additional plaintiffs as well as additional defendants.  *See* Nelson v. County of Allegheny, 60 F.3d 1010, 1014 (3d Cir. 1995).  Additionally, to the extent it is applicable, Rule 17(a)(3) addresses the issue of ratification, joinder, or substitution of the real party in interest and the effect thereof on suits previously filed.  *See* Fed. R. Civ. P. 17(a)(3).  However, for the reasons that follow, the Court need not reach the issue of whether Plaintiff's amendment adding herself as a Plaintiff, individually, as the mother of the decedent relates back to the filing date of her original Complaint under either Rule and she will be dismissed as a Plaintiff to the extent she purports to bring claims in such capacity.

First, Plaintiff has asserted three Counts against the Defendants, the nature of which have remained identical throughout her original, Amended, and Second Amended Complaints.  Count I asserts a claim against Defendants for violations of the decedent's rights under § 1983; Count II asserts a survival action under Pennsylvania state law, 42 Pa. C.S. § 8302; and Count III asserts a

wrongful death action under Pennsylvania state law, 42 Pa. C.S. § 8301.  Despite amending her

Complaint to add herself as a Plaintiff, individually, as the mother of the decedent, Plaintiff did

not clearly articulate the legal bases for doing so or the claims she asserted on her own behalf.

        With respect to Count I, the Court can only assume from Plaintiff's amendment that she

is attempting to assert a claim for the violation of her own constitutional rights for the

deprivation of the life or physical safety of her son by state action.  However, such a claim must

fail as the Third Circuit has made clear that "the fundamental guarantees of the Due Process

Clause do not extend to a parent's interest in the companionship of his [or her] independent adult

child."  McCurdy v. Dodd, 352 F.3d 820, 830 (3d Cir. 2003); *see also* Miller v. C.M.S. Corr.

Med. Serv., No. 08-3014, 2010 U.S. Dist. LEXIS 24156, at *6-7 (D. N.J. Mar. 16, 2010).  The

decedent was twenty-five years of age at the time of his passing, and thus, Plaintiff cannot state a

federal constitutional claim in her sole capacity as the mother of the decedent because any

attempt to recover damages for the loss of such companionship is not constitutionally

permissible in this case.

        With respect to her claims brought in Counts II and III under Pennsylvania's wrongful

death and survival statutes, 42 Pa. C.S. §§ 8301, 8302, the Court finds that Plaintiff lacks the

standing to sue in her individual capacity as the mother of Cade Stevens.   In this regard,

Pennsylvania law clearly states that an action for wrongful death shall only be brought by the

personal representative of the decedent for the benefit of those persons entitled by law to recover

damages for such wrongful death.[7]  Pa. R. Civ. P. 2202(a).  However, if no action for wrongful

death has been brought within six months after the death of the decedent, the action may be

brought by the personal representative or by any person entitled by law to recover in such action

---

[7]        This includes the spouse, children or parents of the deceased.  42 Pa. C.S. § 8301(b).

as trustee ad litem on behalf of all persons entitled to share in the damages.  Pa. R. Civ. P. 2202(b).  Under Pennsylvania law, the term "personal representative" is defined as "the executor or administrator of the estate of a decedent duly qualified by law to bring actions within this Commonwealth."  Pa. R. Civ. P. 2201.  Further, in accordance with 20 Pa. C.S. § 3373, "[a]n action or proceeding to enforce any right or liability which survives a decedent may be brought by or against his personal representative alone or with other parties as though the decedent were alive."  20 Pa. C.S. § 3373.  Accordingly, a survival action must be brought by a personal representative of a decedent's estate and a wrongful death action must be brought by a personal representative if it is filed within six months of the decedent's death or by a person entitled to recover damages by law as trustee ad litem if the suit is filed after six months following the decedent's death.  Cavoulas v. Singh, 81 Pa. D. & C.4th 250, 260-61 (Pa. C.P. 2005).

Under each of the Counts asserted herein, the proper plaintiff is the personal representative of the decedent's estate.  Furthermore, the proper plaintiff in a survival action brought after six months following the decedent's death, as is the case here, is either the personal representative *or* a person entitled to recover damages *as the trustee ad litem*.  Here, Plaintiff appropriately brought this action in her capacity as the Administratrix of the Estate of Cade Stevens.  Because she did not assert and the Court cannot find any legal basis for Plaintiff's amendment adding herself as a Plaintiff individually, as the mother of Cade Stevens, the Court will dismiss her as a Plaintiff in such capacity.

### B. Defendant PrimeCare Medical, Inc.

Defendant PrimeCare Medical seeks judgment in its favor or dismissal on Count I to the extent Plaintiff's allegations are premised on a theory of vicarious liability for the actions or inactions of its employees, Defendants Younkin and Burnsworth.

A private corporation cannot be held liable for the acts of its employees under a theory of *respondeat superior* or vicarious liability.  Monell v. New York City Dept. of Soc. Servs., 436 U.S. 658, 691 (1978).  Instead, in order for a plaintiff to hold such a corporation responsible under Section 1983, the plaintiff must demonstrate that a relevant corporate policy or custom caused the constitutional violation.  Natale v. Camden County Corr. Facility, 318 F.3d 575 (3d Cir. 2003).

In this case, Plaintiff is suing PrimeCare Medical, a professional corporation which provides health care services to inmates at the Fayette County Prison.  Defendant PrimeCare Medical appears to take issue with the fact that Plaintiff's allegations are inappropriately premised on a theory of vicarious liability, which is not constitutionally permissible.  However, read liberally, Plaintiff alleges that PrimeCare Medical had a policy, practice or custom that caused the alleged constitutional violations at issue.  Contrary to Defendant's position, Plaintiff has not alleged that PrimeCare Medical is vicariously liable for the actions of Defendants Younkin and Burnsworth and she even recognizes that such theory of liability is not viable.  At this stage of the litigation, the Court is satisfied that Plaintiff has sufficiently stated a plausible claim against Defendant PrimeCare Medical such that dismissal is not warranted.  As such, Defendant's Motion will be denied on this ground.

## C.  Certificate of Merit

Defendants Younkin, Burnsworth, and PrimeCare Medical seek judgment in their favor or dismissal of Counts II and III, Plaintiff's wrongful death and survival actions under Pennsylvania state law, because Plaintiff has failed to file a Certificate of Merit ("COM") as required by Pennsylvania Rule of Civil Procedure 1042.3.  Under Rule 1042.3(a), a plaintiff

alleging that a licensed professional[8] has "deviated from an acceptable professional standard" must submit a COM within sixty days of filing their complaint.[9]   As such, if a plaintiff's cause of action sounds in professional (*i.e.*, medical) negligence or malpractice, she or he would have to timely file a COM pursuant to Rule 1042.3(a) representing that

> (1) an appropriate licensed professional has supplied a written statement that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm, or (2) the claim that the defendant deviated from an acceptable professional standard is based solely on allegations that other licensed professionals for whom this defendant is responsible deviated from an acceptable professional standard, or (3) expert testimony of an appropriate licensed professional is unnecessary for prosecution of the claim.

Pa. R. Civ. P. 1042.3(a).

"Merely suing a professional does not require a [COM]; only suing a professional for violating professional standards does." McElwee Group, LLC v. Mun. Auth. of Elverson, 476 F. Supp. 2d 472, 475 (E.D. Pa. 2007).   "The Rule, by its terms, applies only to claims for professional malpractice – or negligence in the performance of one's professional duties."   Id. Courts applying the rule have declined to apply it to claims based on ordinary negligence or intentional torts.   *See* id. at 475-76; Merlini v. Gallitzin Water Auth., 934 A.2d 100, 107 (Pa. Super. Ct. 2007) (concluding that plaintiff was not required to file a COM because her allegations concerned ordinary, not professional, negligence); Krauss v. Claar, 879 A.2d 302, 306-07 (Pa. Super. Ct. 2005) (holding that the COM requirement is inapplicable in an action

---

[8]      Plaintiff does not argue that Defendants are not "licensed professionals" within the definition of the Rule. The Court will assume that they are for purposes of this opinion.  *See* Pa. R. Civ. P. § 1042.1

[9]      Importantly, "Pennsylvania Rule 1042.3, mandating a certificate of merit in professional negligence claims, is substantive law . . . and must be applied as such by federal courts."   Liggon-Redding v. Estate of Sugarman, 659 F.3d 258, 265 (3d Cir. 2011).

against an attorney for, *inter alia*, intentional misrepresentation, because plaintiffs did not sue the attorney for professional negligence or malpractice).

Here, Plaintiff asserts that her claims are not premised in professional negligence or malpractice and, therefore, COMs are not required.  As anticipation to this response, Defendants cite Hoyte v. Wagner, No. 05-4437, 2006 U.S. Dist. LEXIS 72685, at *9-11 (E.D. Pa. Oct. 5, 2006), wherein the district court dismissed the plaintiff's wrongful death and survival actions as to the moving medical defendants because the plaintiff did not file a COM and, although the plaintiff did not refer to the count as a professional malpractice action, a "fair reading of the allegations" made the count appear to be one for a professional malpractice claim brought pursuant to Pennsylvania law.  Plaintiff maintains that this case is easily distinguishable from Hoyte because she, unlike the plaintiff in Hoyte, does not allege that the medical Defendants "deviated from the acceptable professional standard" of care and her claims are not premised upon professional negligence or malpractice but upon deliberate and willful action, namely deliberate indifference.

In Pennsylvania, "[m]edical malpractice is defined as the 'unwarranted departure from generally accepted standards of medical practice resulting in injury to a patient, including all liability-producing conduct arising from the rendition of professional medical services.'"  Ditch v. Waynesboro Hospital, 917 A.2d 317, 321-22 (Pa. Super. Ct. 2007) (quoting Toogood v. Owen J. Rogal, D.D.S., P.C., 824 A.2d 1140, 1145 (Pa. 2003)).  As in an ordinary negligence case, a plaintiff must prove duty, breach, harm and causation.  Id. at 322.  Courts distinguish medical malpractice from ordinary negligence in two ways: "'[f]irst, medical malpractice can occur only within the course of a professional relationship.  Second, claims of medical malpractice necessarily raise questions involving medical judgment.'"  Id. (quoting Grossman v. Barke, 868

24

A.2d 561, 570 (Pa. Super. Ct. 2005)).  Thus, to determine whether a claim involves medical malpractice, a court must ask: "'(1) whether the claim pertains to an action that occurred within the course of a professional relationship; and (2) whether the claim raises questions of medical judgment beyond the realm of common knowledge and expertise." Id.  Answering both these questions affirmatively means that the claim involves medical malpractice and requires a certificate of merit. Id.

Although Plaintiff asserts that her claims are not premised on medical negligence or malpractice, a court must look to the substance of a complaint rather than to its form to determine whether a claim against a professionally licensed defendant sounds in professional malpractice.  See Varner v. Classic Communities Corp., 890 A.2d 1068, 1073-74 (Pa. Super. Ct. 2006) (stating: "[I]t is the substance of the complaint rather than its form which controls whether the claim against a professionally licensed defendant sounds in . . . professional malpractice").  To determine what theory of liability Plaintiff is asserting, the Court must examine the averments made in her Complaint.  See Ditch, 917 A.2d at 321.

Upon review, the Court is not convinced that Plaintiff's wrongful death and survival claims sound in medical negligence or malpractice.  By its terms, Rule 1042.3 applies to cases where it is alleged that "a licensed professional deviated from an acceptable professional standard," where a COM might serve to validate the allegations of a lay plaintiff.  Such is not the case here.  As such, the Court does not agree that a COM was necessary or appropriate.  Whether Plaintiff's allegations will support wrongful death and survival actions remains to be seen.  However, the Motion will be denied as to this ground.[10]

---

[10]     The Court notes that the Pennsylvania Wrongful Death and Survival Act, 42 Pa. C.S. §§ 8301, 8302, was enacted to allow the survival of viable causes of action for bodily injury to a deceased, beyond the life of a victim.

25

An appropriate order follows.

**AND NOW** this 17th day of October, 2012;

**IT IS HEREBY ORDERED** that the Motion to Dismiss filed by Defendants Krukowski and Fayette County (ECF No. 39) is **DENIED** to the extent it seeks dismissal on the basis that Plaintiff's claims against them do not relate back to the filing date of her original Complaint.  It is further **DENIED** to the extent it seeks dismissal of Plaintiff's claims in her individual capacity as the mother of the decedent based on a theory that the addition of herself as a Plaintiff does not relate back to the filing date of her original Complaint.  However, Plaintiff will nevertheless be dismissed in such capacity based on her failure to set forth a viable legal basis for the amendment.

**IT IS FURTHER ORDERED** that Plaintiff is dismissed from this action as a Plaintiff in her individual capacity as the mother of Cade Stevens.

**AND IT IS FURTHER ORDERED** that the Motion for Judgment on the Pleadings filed by Defendants Younkin, Burnsworth, and PrimeCare Medical (ECF No. 44) is granted in part and denied in part.  The Motion is **GRANTED** to the extent that Plaintiff's claims against Defendants Younkin and Burnsworth do not relate back to the filing date of her original Complaint and are therefore time-barred under the applicable statute of limitations.  Defendants Younkin and Burnsworth are therefore dismissed from this action with prejudice.  The Motion is **DENIED** to the extent Defendants seek judgment in their favor or dismissal of Counts II and III

---

The Wrongful Death and Survival Act did not create a new theory of liability but merely allowed a tort claim of the decedent to be prosecuted.  As a result, a plaintiff must state all the elements of a valid tort in order to maintain a claim under those statutes and such theory is subject to defenses.  Here, Plaintiff is proceeding under a constitutional tort theory of liability, namely deliberate indifference.  At this stage of the proceedings, Defendants have not pointed to, and the Court is unaware of, any precedent which would preclude Plaintiff from proceeding under this theory. *See, e.g.*, <u>Hobson v. Dominguez</u>, No. 2:10CV429, 2012 U.S. Dist. LEXIS 136238, at *33-42 (N.D. Ind. Sept. 24, 2012); <u>Sowell v. Dominguez</u>, No. 2:09CV47, 2011 U.S. Dist. LEXIS 8145, at *30-37 (N.D. Ind. Jan 26, 2011).

based on Plaintiff's failure to file a Certificate of Merit.   The Motion is also **DENIED** to the

extent Defendant PrimeCare Medical seeks judgment in its favor or dismissal of Count I.

Lisa Pupo Lenihan
Chief United States Magistrate Judge

cc:   All Counsel of Record
      *Via ECF Electronic Mail*